May it please the Court, Walter K. Pyle for Felix Hightower, the petitioner in this case. The secrecy of the jury deliberations is fundamental to our system of justice. The idea that there is universally accepted. The jurors have to be able to have free expression of their ideas. They can't get any hints from outside, from the judge, from lawyers, from a bailiff, from anybody, can't get any hints as to how their deliberations should be undertaken or what result they should reach. Now there are times when a situation arises where it might be Let me ask you a question, just off, I think in your opening brief you said the applicable standard of review is de novo. Doesn't AEDPA apply here? Yes, it does. All right. So how do we square that with de novo? Well, de novo doesn't apply, excuse me, AEDPA, the deference to the state court applies if certain conditions are met. An unreasonable application of the facts or the lot of the facts takes it out of the deference to the state court. Well, I gather when you're talking about de novo, you're talking about de novo review of the federal district court's decision, not of the state. That was my statement, I believe, yes. But Judge Callan is entirely correct that in terms of an AEDPA analysis, we do engage from the federal system's point of view in deference to the state court decision, right? Yes. And for example, we would have to defer to the judge's determination of credibility. In our argument here in our briefs, we didn't really touch on what juror number eight said to the judge because it was very clear that the judge discounted or at least his credibility is assumed to have been determined by the judge and the judge's We use U.S. Supreme Court precedent, not Ninth Circuit precedent. First, when you get to the judge in the trial is confronted with a situation where you get a note from one of the jurors that the initial note, I think, is not specific as to that it's one person, that it's a holdout or whatever, that there's jurors, juror or whatever that there's an issue with. You've got a problem just with that initial doing and inquiry at that point, correct? What's the U.S. Supreme Court precedent that says that the judge can't find out more about what the problem is? Well, there is no prohibition against the judge finding out more about what the problem is. The prohibition is with interfering with the process of the jury. And one of those notes said, we have a juror who's not following instructions. At that point, I think it was within the court's discretion to make an inquiry because there was an indication somebody's not following instructions. If somebody is not deliberating, refusing to deliberate, or not following instructions, then yes, that juror could be excused. But the court said So you're not disputing the initial beginning of the one that when the trial judge gets a note, you know, that there's a problem. You're not disputing that the judge could have done something at that point. Depending on what the problem is. And here they say somebody won't follow instructions. I think that is probably within the court's discretion to make that inquiry. Because that's the If a juror is not following instructions or, excuse me, is refusing to follow instructions, is the way the court's put it, does he express that I'm not going to follow the instruction? Right. You don't know whether the person's locking themselves in. I mean, having been a prior trial judge and having gotten notes, you don't know if the person's locking themselves into the bathroom. I've had people that have gotten claustrophobia, any number of things, or sitting there refusing to talk, or Right. Or we don't know if the person who wrote the note says, I don't think he's following instructions. And it turns out he really is. Right. Okay. So, but any inquiry must be limited. Because simply asking questions about a particular area of the deliberations can influence those deliberations. So you, and the courts are universal. You can't inquire to the juror's thoughts, motivation of an individual juror. You focus on the conduct that's going inside, not the content of the deliberations. In that vein, what do we make of the state trial court's factual finding that the juror was sleeping at various times? It does seem like an add-on, I recognize, but still it's a finding. Well, it is an add-on, and But that's not necessarily, doesn't necessarily mean it's reversed? No. Well, I think there's two things wrong with that. Number one, the judge is not permitted to kind of have a, he doesn't have a groving commission to say, well, I'm going to see if I can find, this is a holdout juror, I'm going to see what I can find out, maybe I can find a reason. They had talked to four jurors before the judge started asking the jurors, hey, did you think he was sleeping? Did he look like it? Well, I don't know. He had his eyes closed. He could have been. And the finding of fact was all the jurors said he was sleeping. That's simply not true. He didn't even ask all the jurors. He didn't start asking until Well, there were a couple that didn't. But, I mean, sleeping in a trial is, and not hearing evidence, is, you know, I mean, if you'd left a juror on, let's say that if, you know, let's say that if you left a juror on that was sleeping and then slept through a part of the trial, I mean, that would be a basis for setting aside something. You're sort of damned if you do and damned if you don't. Well, it might be. But the judge had no business making that inquiry. He had already determined the juror was deliberating. The foreman's, foreperson, forewoman said, yeah, we've gone over it point by point, over and over. He gives reasons. He has a doubt. It has to do with motive. Has he ever said he wouldn't follow the instructions? No. In fact, he says he's following the instructions. To consider this under AEDPA, are you saying that this is an unreasonable determination of the facts in light of the evidence? I am. Are you saying that there's a legal error? I am. I'm saying the procedure was fundamentally unfair. Well, then what is the clearly established Federal law as determined by the Supreme Court, which you say was not followed? That the defense of the case. What's the case?  Well, then, under AEDPA, we don't create our own standard. If the Supreme Court hasn't ruled, we don't grant relief, do we? You don't, but the Court says that in all the Sixth Amendment says, in all criminal prosecutions, the accused enjoys the right to a trial by an impartial jury. And the Supreme Court says, in Williams v. Florida, this applies to the states. And Hicks v. Oklahoma says, if you establish a requirement, such as a unanimous jury or a 12-person jury, you can't pick one defendant out and say, we're going to go with 11 on this guy. So it's a combination of these cases that say, in effect, once California has determined that there should be a unanimous 12-person jury, you can't go with 11. And one of them is a holdout. We're going to discard that card and draw a new one. And the prosecution says, oh, look, I won. So the right is the right to a trial by a unanimous jury, and there should be no interference with the deliberative processes of the jury. I don't think there's any court in the country that would say you can interfere and make intensive inquiry into the actual deliberative process. Now, I'm an outlander here, and I am familiar with Third Circuit law, but in the Third Circuit, we do not say that violations of State law are grounds for relief under EDPA. It's not – it's – it's – it's – Hicks v. Oklahoma says, once you establish a particular procedure, you have to follow that procedure. You can't say for you – for everybody in this courtroom except Mr. Hightower here, you have to have a unanimous jury. In Mr. Hightower's case, it doesn't have to be unanimous. So it's not just a matter of State law, it's a matter of due process applying the procedural framework that is within State law. Well, he did have a unanimous jury. Really, the issue just goes back, was that person removed because, you know, it was – I mean, the initial inquiry is, was the person removed because there was a reason that they – you know, they were violating part of what jurors have to do, or was the person removed because they didn't agree with the other people? And if the court had resolved it in that fashion, you know, we'd – you know, we'd have to support that as well if they, you know – But the process went into the actual deliberations and asked leading questions. The judge asked leading questions. The prosecutor asked leading questions. He said, did he make this statement? And it turned out he had made the statement, and the defense says, how did that statement come up? Oh, you can't ask that. And juror number three said he had other reasons, and says, oh, I'm not going to have to let you – I'm not going to go into that. So it's a one-sided inquiry where you bring out evidence favorable to the prosecution and you don't let the defense bring up the other questions. Are you saying an unreasonable determination of facts can be based upon leading questions? No, I'm saying the court determined that this particular juror had said, I would never find a son guilty of killing his mother. He never said that. Nobody ever said that. And the whole process was flawed anyway, but he never said that. And all the jurors – If he has, he'd have to say it. No, but the court – that's the finding of the court, that he said, I would never be able to find a son guilty of killing his mother. And nobody said that. They said, there's a loving son in this case. The judge says, I don't think loving has anything to do with it. Well, of course it does. The jury was instructed, absence of motive points to innocence. And the foreperson made clear that his doubt had to do with a question about the motive. And the question of the juror says, yes, I had difficulty finding how a loving son could stab that woman that many times. Counsel, your time's expired, but we'll give you a couple minutes for rebuttal. May it please the court, both parties have a right to – What is your name? Pardon? What's your name? I'm Catherine Rivlin, Supervising Deputy Attorney General for Respondent. Thank you. Thank you. May it please the court, both parties have a right to an unbiased jury. And this court's investigation developed very methodically through concern about whether this juror could follow the instruction to set bias aside if there were any. It was the defense theory that a child – the defense theory and closing argument was that no son could kill a mother. And so it appears to me that the juror bought the theory. What's wrong with that? There wasn't any evidence that there was any kind of a framing or something like that. And that's where this juror had reached – I'm sorry, what do you mean by framing? The juror had reached the conclusion that since no son could stab his mother 37 times, the defendant must have been framed by somebody. Oh, I see what you're saying. Yes. But you know, that was the – it would be one thing if the juror had entered the trial saying I'm absolutely convinced that no son could kill a mother, but the defense gets up and argues. That's their – I mean, it's a tough defense case. The defense argues in closing argument no son could kill a mother. And so the juror, holdout juror says, well, yeah, no son could kill a mother. So why is that indicative of prejudice as opposed to just buying the defense theory? Because the juror basically explains either to the other jurors or to the court that if he'd known that this was a matricide, he would have explained that he should be sitting on this case. Basically, he admits he has this fundamental bias. The evidence doesn't matter. Well, let's be real. Yeah. I think the first note that the judge gets, the judge would have been remiss not to figure out what the problem was. Correct. But then at – you start getting into the questions, and it does appear that some of it is that this guy is the holdout juror and that he's just not seeing the evidence the way that everyone else is seeing it, which is typical of what – how holdout jurors are. I mean, and that's part of the deliberative process. But then out of that, it eventually comes that I think that the judge makes the finding that the guy lies or the credibility. But if you – let's say if you say at this point when it – if initially he should have just said, oh, hey, okay, this guy's just a holdout juror and should have stopped the questioning. But from there, then it comes out that he lies, he sleeps, you know, and he does a number of other things. If he should have stopped there, do we get to the rest or what's the story here? Well, the question is, can he follow the instructions? That – we've already had an admission that that is something we can continue to look into. Right. I'm there. And it's clear from both Juror Note 1 and Juror Note 2 that that's the problem and that the instruction that this juror cannot follow is the instruction to set biases aside and consider the evidence. That's where this investigation finds its authorization. How is this any different from Sanders versus Lamarck? You know, Sanders was a habeas case. We had a holdout juror and we said when you have – when the court – once the court knows what the vote is and there is a holdout juror, you have to exercise some care, even on habeas review, and you can't – you have to limit your inquiries. What's different? Well, first of all, the Court of Appeal exercised considerable care. This is their third opinion on this case. They have looked into it and considered all the – But it's not the Court of Appeal. It's the trial court. Right. But – I know we review the Court of Appeal decision. Correct. But what we said in Sanders, in the habeas case out of California, is that once the trial judge understands that this is a holdout juror, you can't then try to throw the holdout juror off the jury without pretty good cause. Well, we would argue both that we had pretty good cause here. This was not a simple holdout juror situation, as I think the Court of Appeal tried to explain in considerable detail. Even viewed without the later developed information that he was sleeping through evidence he didn't that does not permit consideration of this evidence, that is a violation of the instruction, not a refusal to deliberate, or a – I mean, it is a refusal to deliberate, not a failure to deliberate the way everybody else wants to deliberate. So what was the – what was the – for example, in Voir dire, what was the response that the juror gave that was – you felt was deceptive? Well, all of the jurors were asked if they could come to this case with an open mind. Were they told it was a matricide? They knew that it was a murder. Okay. And that's not the same as a sign telling a murder. I understand. And I believe they had the names of the victim and the defendant, which were the same. So I don't believe that there was a specific identification of the victim during Voir dire as the mother of the defendant, but there was, you know, it was a stabbing death, two people with the same last name. I think that they did know. Well, so what you're saying is that the proposition that no son could kill a mother makes you not fair to sit on that type of case, even though you don't know that it's that type of case. Well, the – I wouldn't say – I wouldn't call it a proposition. As described here, and even by the juror himself, a fundamental belief that it is not possible for a son to stab a mother to death. If you are asked, can you view a murder fairly, the answer should be anything except a matricide, I guess, for this particular juror. And that's what he basically says. If I'd known that, you know, the son had killed the mother, I would have said, I can't be fair here. I don't believe it can happen. Well, but he didn't know. So if he's asked, can he sit on a murder jury, you have to consider every possible type of murder and say, well, okay, if it was killing a baby, maybe I couldn't be fair. If it's a son killing a mother, maybe I couldn't be fair. Or you have to conceive of every – in a sense, you do, Your Honor. But that's a fairly broad statement because, you know, I mean, this really isn't much different from Sanders-Lamarck in some respects because there, we had a lone holdout juror who said, I just don't believe the police. And then the prosecution came in and said, well, I don't think she was quite truthful in voir dire because she should have said that she didn't trust police or something like that. And we said, no, that's – you can't conjure up these things, trump up these pretend voir dire bias issues later, that you have to exercise care once you know it's a holdout juror. It's not a holdout juror. I think this is an entirely different case. But basically, once, you know, once you throw out the holdout juror, you're really coming very close to coercing a verdict. Well, but let's broaden the context a little bit. If this were, had been a capital case in California, we routinely ask the basic qualifying question, could you ever vote for the death penalty? And if the answer is no, you're disqualified, right? And now, we didn't know to ask, could you ever find a son guilty of – and we didn't know. He didn't know it was in the case. We didn't know that that was, you know, a bias that – a specific little bias we were going to be allowed to look for, I guess. But there are certain biases, certain roadblocks to deliberation, to open-minded thinking, to restricting your view of the evidence to that evidence which has been presented in the courtroom that renders a juror unable to render an unbiased decision in the case. That's what this court uncovered. Now, it happens that it was one juror instead of two, but the mere fact that it's only one juror doesn't prevent the court from uncovering a justice-defying bias, which is what this was. Well, didn't the juror say that he – I'm sorry, she would listen to the evidence, and even under questioning, said the thought that she was fairly interpreted in, given the prosecution that she had? At the – at the voir dire stage, or are we – No, at the interview stage. At the questioning stage. Yeah. I mean, she expressed her view, obviously, that she didn't think – you know, she found it difficult to believe that a son would kill a mother, but… And she – and it had been expressed more strongly to the other jurors, and I think the problem in part here was that the court had to make a determination about what was going on and had to make some sort of factual determination. Well, here's the question. So you can imagine a case where the son is charged with killing his mother, and the son would be guilty, and you would vote guilty, and the answer is yes. So she didn't say, I'm going to vote to acquit in every case of alleged matricide. She just – she just said that she found it difficult to believe, which was the defense theory. But had – had – had said, you know, if I'd known this was a matricide, I would have had to pull myself off. Those are inconsistent statements, and the court believed one and not the other. Okay. It's a factual determination to which we defer. All right. Any further questions? No. Thank you, counsel. Thank you very much. It is almost impossible for a juror during voir dire to say how they will react to the evidence, because they haven't heard any of the evidence. All we can ask is general questions, which basically say, can you be fair? And I think it's unfair to come back later on after the evidence has been heard, and the juror says, I have a tough time believing that, to say, well, you were untruthful in voir dire. The court here – If we agreed with you, why – why do you think this is not harmless error? I know that's a double negative, but – I understand. But, you know, this – the evidence in this case is pretty strong. But it's – Why isn't there any error harmless? Well, I don't know if it's that strong or not. He was seen in the neighborhood running away. His blood was found in the apartment. Carried out the TV, drove away in the car. Sixty-three stab wounds, you know, blood on him. Yeah. Because it's structural error. It goes to the fundamental – it's impossible to evaluate the effect of replacing a holdout juror with someone who turns out not to be a holdout juror. It just does not lend itself to harmless error analysis. It is – it is – I think this is one of the few areas where it is structural error because it can't be evaluated because the whole process was skewed. The court should have made inquiry, is he following instructions, and the foreman – foreperson said yes. He's not – he's not saying he can't follow the instructions. He says he is following the instructions. He says he's not – he hasn't said he's not capable of following the instructions. At that point, the inquiry should have ended. Thank you. Thank you, counsel. Cases are to be submitted.
judges: Thomas, Callahan, Roth